218 So.2d 375 (1969)
Bessie JOHNSON, Plaintiff-Appellant,
v.
ST. PAUL MERCURY INSURANCE COMPANY et al., Defendants-Appellees.
No. 11137.
Court of Appeal of Louisiana, Second Circuit.
January 7, 1969.
Rehearing Denied February 5, 1969.
Writ Granted April 3, 1969.
*376 Love, Rigby, Donovan, Dehan & Love, Shreveport, for appellant.
Mayer & Smith, Shreveport, for appellees.
Before AYRES, BOLIN and PRICE, JJ.
BOLIN, Judge.
This case arises out of an automobile accident occurring at approximately 8:45 a. m. on June 11, 1966, near Beebe, Arkansas. Plaintiff, Mrs. Bessie Johnson, while a guest passenger in an automobile owned and driven by Mr. Harley DeMoss, was injured when the DeMoss vehicle struck the rear of a vehicle driven by Leon Rutledge of Newport, Arkansas. Both Mrs. Johnson and Mr. DeMoss are Louisiana residents and the car of the latter was registered in Louisiana and insured by St. Paul Mercury Insurance Company. The damages sued for by Mrs. Johnson were allegedly caused by the negligence of Mr. DeMoss and he was joined with his insurer as defendant in the suit. From judgment favoring defendants plaintiff appeals.
*377 Pretermitting for the time a discussion of Mrs. Johnson's injuries we will proceed to the legal questions which must first be determined.
It is admitted by defendants in brief that, should the law of Louisiana be applicable, Mr. DeMoss was guilty of negligence and no question would arise as to insurance coverage or liability. As a consequence of this admission we consider the only remaining question to be whether the law of Louisiana or that of Arkansas is applicable. Secondly, should we determine Arkansas law is applicable we must examine all the facts to determine if there is sufficient proof of negligence to impose liability on defendants under the so-called Arkansas Guest Statute:
"No person transported as a guest in any automotive vehicle upon the public highways or an aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft, unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights the of others." Arkansas Statutes, Section 75-913 (Act 61 of 1935).
The trial judge assigned no written reasons for his judgment from which we conclude, in light of defendants' admissions, he applied the Arkansas tort law and found the actions of defendants did not constitute wanton and willful negligence when measured by the standard of care established by cases interpreting the quoted statute.
Appellee contends the decision of the lower court was correct and that the jurisprudential law of Louisiana requires application of the substantive law of the place where the tort is committed to determine whether the courts will impose liability on the tort-feasor under the facts of the case.
Opposing this contention appellant urges this court to follow the trend of recent jurisprudence from other jurisdictions and to apply the law of the forum where that court finds a substantial "grouping of contacts" within its territorial area so as to justify departure from the formerly accepted rule. Appellant observes with acuity that Louisiana has many times given lip service to the earlier conflicts rule, i. e., the substantive law of the place of commission of the tort will be applied by a foreign forum, nevertheless, the issue has in fact never been squarely presented nor passed on as a "conflicts" question.
This observation has lead us to scrutinize the Louisiana conflict of laws rule with regard to torts. We have been cited to numerous Louisiana cases which are alleged to have recognized as controlling the early common law conflicts rule that the law of the place where the tort is committed is the law to be followed in determining the degree of negligence necessary to fix liability.
In Mock v. Maryland Casualty Co., 6 So. 2d 199 (La.App.Orl.1942) plaintiffs sued for damages for wrongful death of their brother resulting from a Texas accident. Under Texas law no liability was imposed on a negligent defendant in favor of persons suing for death of a brother and plaintiffs conceded that if they had sued the tort-feasor, Weiland, their rights against him would have been controlled by the law of Texas. However, they contended Act 55 of 1930 (the Louisiana `long-arm' statute) gave them a direct action against the insurer of the person whose negligence caused the accident, arguing that by reason of the statute there had been created a contract between plaintiffs and the insurer.
They asserted, therefore, their suit was one sounding in contract and the rights thereunder should be determined by Louisiana law where the policy was delivered. The court rejected this reasoning and held the statute only afforded a remedy for recovery for the tort of the insured and whether a right was created in plaintiffs for a Texas tort was governed by Texas *378 law, citing Blashfield, C.J.S., American Jurisprudence and the first Restatement of Conflict of Laws.
Since plaintiffs in the Mock case had conceded that Texas law would govern insofar as tort liability was concerned the court was not called upon to decide whether, having concluded the action was not created by a Louisiana contract, the Louisiana tort law would apply. Thus its pronouncement of the general rule, referred to by the quoted authorities, was not essential to a resolution of the case.
In Matney v. Blue Ribbon, Inc., 202 La. 505, 12 So.2d 253 (1943) our supreme court held: a married woman, domiciled in Texas, who was injured in an automobile accident in Louisiana could maintain an action in damages in Louisiana notwithstanding under Texas law her right of action was community property and recoverable only by her husband. The court repeated the oftquoted rule that in cases of tort, the law of the place where the wrong was committed is paramount and the law of the domicile will not ordinarily be recognized in such matters. In conclusion, the court stated:
"However, in exceptional circumstances where the law of domicile is not inimical to the public policy of the forum, the latter will recognize and enforce the law of domicile for reasons of comity."
The supreme court purported to distinguish the rationale of Matney from the principle of law enunciated in the 1900 case of Williams v. Pope Manufacturing Co., 52 La.Ann 1417, 27 So. 851, 50 L.R.A. 816, 78 Am.St.Rep. 390. In Williams a married woman domiciled in Mississippi, while sojourning with her daughter in Louisiana, was defamed, unlawfully arrested and imprisoned as the result of the wanton and illegal acts of defendant corporation, which was domiciled in Connecticut. Defendant urged the law of Louisiana (lex fori) should control and that at the time of suit a married woman could not sue in Louisiana in her own name for her injuries. The supreme court reversed the lower court and held: since the claim of Mrs. Williams was transitory in its nature and since it was a personal right to which she was entitled under the law of Mississippi the courts of Louisiana would entertain the suit filed by her in her own name, even though a married woman domiciled in Louisiana had no such right of action.
It is apparent from a reading of the two cases noted above the law of the domicile was applied in one while the law of the forum was applied in the other and in both instances the more liberal of the two was applied which permitted recovery in both.
In a case emanating from this court, Cone v. Smith, 76 So.2d 46 (La.App. 2 Cir. 1954) the court, apparently without objection on part of plaintiff, applied the Texas guest statute and found defendant's excessive speed was not the cause of the accident and rejected plaintiff's claim, citing as authority therefor 60 C.J.S. Motor Vehicles § 259; Restatement of Conflict of Laws, § 391, 378. It should be pointed out that in Cone plaintiff specifically set forth in his petition that defendant's excessive speed, his failure to keep his car under control and other acts of negligence would, if proved, constitute heedlessness or reckless disregard of the rights of others. The court commented in the opinion that the obvious purposes of the latter allegation was to expressly state a cause of action under the Texas guest statute. Here again the appellate court was not called upon to decide the conflicts point, it having been conceded by plaintiff that the only issues were whether he could recover under Texas law and his quantum of damages, if recovery was allowed.
Later, in Blount v. Blount, 125 So.2d 66 (La.App. 1 Cir. 1960) the court, following without question the decision in Cone, pointed out the parties stipulated the Texas guest statute, and the Texas cases interpreting it, controlled the determination of negligence in the case.
*379 In Watkins v. Cupit, 130 So.2d 720 (La. App. 1 Cir. 1961) the court applied Louisiana law, both with regard to the degree of negligence and the liability of a Mississippi father for wrongful injury inflicted by his minor son, to an accident occurring in Louisiana, even though the father was domiciled in Mississippi under whose law the father would not be liable.
It was held a wife could not sue her husband in Louisiana for a tort committed in Mississippi since Mississippi allows no such action during marriage in Nicholson v. Atlas Assurance Corp., 156 So.2d 245 (La.App. 4 Cir. 1963). The court observed, however, that plaintiff would have fared no better if the Louisiana law was applied since no such action would be allowed here. In conclusion the court held:
"Neither could she maintain a direct action against her husband's insurer since the Louisiana Direct Action Statute is inapplicable to accidents occurring outside of this state. See LSA-R.S. 22:655; Honeycutt v. Indiana Lumbermens Mutual Ins. Co., 130 So.2d 770 (La.App. 3 Cir. 1961)."
The decisions in Honeycutt, Blount and Nicholson, supra, were overruled on the issue of whether the Louisiana direct action statute was applicable to accidents occurring outside of Louisiana in Webb v. Zurich Insurance Co., 251 La. 558, 205 So.2d 398 (1967). Although not made an issue in the instant case we consider it pertinent to note the long and troubled course of the Louisiana direct action statute was finally laid to rest by the Webb decision, wherein the supreme court reviewed the prior Louisiana jurisprudence and, overruling the cases, held the direct action statute permitted an injured Louisiana claimant suing in Louisiana on a Michigan tort to sue the foreign insurance company directly for damages resulting from negligence of the insured, even though the tort occurred outside the state. In so holding the court gave expression to its rationale:
"As presently written, the Louisiana direct action statute represents the culmination of a long developmental process which began with the passage of Act 253 of 1918, and despite ingenuous legal arguments seeking to restrict its application, has been gradually expanded in scope by the legislature and the courts to enlarge the remedy thus made available to a person injured through the fault of the tortfeasor. The end result has been to make a fund directly available to one injured as the result of the acts of an insured, provided there are minimum contacts in Louisiana. See, Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351; West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122 and Morrison v. New Hampshire Ins. Co., 249 La. 546, 187 So.2d 729 (1966).
"In the Morrison case this court, in a well considered opinion, quoted with approval the following from the case of Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co., 10 Cir., 173 F.2d 844 cert. denied, 337 U.S. 930, 69 S.Ct. 1495, 93 L.Ed. 1737, which gives the rationale underlying this rule of law thusly: "All legislation making foreign corporations amenable to judicial process in the state in which they seek the privilege of doing business is predicated upon the right of the state to protect its citizens in their controversies with such corporations by requiring that the same be adjudicated in the courts of the state rather than compelling its citizens to travel to remote places to litigate such controversies. Judicial decisions upholding such legislation are likewise founded upon the same logic. No sound reason appears why the state should not have power to compel foreign corporations seeking entrance to the state to agree that while engaged in business under such license, the state courts should have jurisdiction of all controversies arising between it and the citizens of the state."
"This now well established public policy recognizes the social importance of modern *380 liability insurance in our highly industrialized society as a means whereby persons injured as the result of an accident may obtain financial relief, and that the policy against liability is not issued primarily for the protection of the insured but for the protection of the public. See, Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351, supra, and West v. Monroe Bakery, Inc., supra."
In the Webb case neither the court of appeal nor the supreme court referred to or discussed the tort law of Michigan where the negligent act admittedly occurred. Rather, after determining that plaintiffs had a right to maintain their action against the insurer in Louisiana, the court examined the testimony of the witnesses and found sufficient negligence under Louisiana law (lex fori) to permit plaintiffs to recover. Apparently the issue as to the proper substantive tort law was not raised or urged in either court.
Whether the right granted to sue a foreign insurance company directly in Louisiana is a substantive or procedural right we are not prepared to state. However, the creation of a right where one did not exist before appears to have overtones both substantive and procedural and, insofar as the persons concerned, it appears to be basically substantive. Black's Law Dictionary defines "substantive law" as:
"That part of law which creates, defines, and regulates rights, as opposed to `adjective or remedial law', which prescribes method of enforcing the rights or obtaining redress for their invasion."
Since the Louisiana direct action statute, as interpreted by Webb and Morrison, provides the right to and the method for obtaining personal jurisdiction over a foreign insurance company and also allows suit against the insurer without the necessity of joining as co-defendant the actual tort-feasor we perceive no reason for refusing to apply the substantive tort law of Louisiana with regard to the degree of care required by a person who negligently injures a Louisiana citizen even though the injury occurs in another state, where as here sufficient minimum contacts are found to avoid any injustice to the defendant. This is not to say that had the suit been brought in Arkansas where the accident occurred Arkansas could not have applied her own tort law, as well as procedural law, to the facts and a different result might have been reached. Nevertheless, the plaintiff being a citizen of Louisiana and having chosen one of the two proper venues and having established the existence of sufficient minimum contacts to give Louisiana jurisdiction over defendants, is entitled to have her right to recover determined by the normal standards of care usually applied by Louisiana courts in interpreting La.C.C. Art. 2315.
The choice of law doctrine has found expression in many recent cases from other jurisdictions and in writings of many scholars on the subject. In a recent decision from a Louisiana appellate court, Blanchard v. Blanchard, 180 So.2d 564 (La.App. 3 Cir. 1965) involving Louisiana residents injured in Texas, Judge Tate wrote a concurring opinion dealing with the "grouping of contacts" argument. The majority found sufficient gross negligence under Texas law to allow recovery by plaintiffs and thus avoid discussion of the possible application of Louisiana tort law. We note the following from Judge Tate's concurrence:
"The writer concurs that an affirmance is justified, whether Texas or Louisiana law supplies the duty of the defendant Louisiana driver toward his plaintiff Louisiana passenger. In our court's opinion, we assume, most favorably to the occassion to pass without noting that as the law of the place of the tort, i. e., Texas where the accident occurred.
"Nevertheless, the writer did not wish the occasion to pass without nothing that there is in truth little reason for Texas law to furnish the duty to be enforced *381 by a Louisiana court in a suit between Louisiana residents arising out of an accident of a car based and insured in Louisiana.
"The `law of the place of the tort' is not a rule provided by statute. It is rather a jurisprudential principle rather lately imported into Louisiana. It is a principle which is being repudiated as arbitrary and not founded upon sound reasons of law or policy, both by the courts of many other jurisdictions and also by the proposed Second Restatement of the Law of Conflict of Laws.
"See Comment, Conflict of Laws in Louisiana: Tort, 39 Tul.L.Rev. 96 (1964); Weintraub, Revolution in the Choice of Law for Torts, 51 American Bar Ass'n Journal 441 (May, 1965); Reese, Conflict of Laws and the Restatement Second, 28 Law and Contemporary Problems 679 (1963; Ehrenzweig, The "Most Significant Relationship" in the Conflicts Law of Torts, 28 Law and Contemporary Problems 700 (1963); Symposium (by leading conflict-of-law scholars) on Babcock v. Jackson, 63 Colum.L.Rev. 1212 (1963). See also Professor Rheinstein's exhaustive analysis of the irrationality and lack of legal foundation of the rule requiring automatic application in torts of such rule: "The Place of Wrong; A Study in the Method of Case Law", 19 Tul. L.Rev. 4 (Part 1), 165 (Part 2).
"Since our court is not by the present facts required to decide whether the original bases of the Louisiana decisions importing the principle into Louisiana law have been eroded by subsequent developments concerning the non-Louisiana authorities upon which the principle was initially based, the writer concurs with our majority opinion as written."
In the 1964-65 review of the work of appellate courts, 25 Louisiana Law Review 387 at 389, Professor Joseph Dainow had this to say relative to the Nicholson case, supra, and the current trend in conflict of laws:
"In the Nicholson case, a quotation from the earlier Burke case places great reliance on the torts rule of the 1934 Restatement on Conflict of Laws, a rule which has not only been discredited by nearly all the writers in the field but which is also pretty much discarded by the American Law Institute itself in its current work on Restatement of the Law Second for Conflict of Laws. On the point here in issue, the latter work now proposes: "Whether one member of a family is immune from tort liability to another member of the family is determined by the local law of their domicile."
"In its approach to various recent developments and works in the field of conflict of laws, the American Law Institute is relatively conservative; yet they have discarded the old general rule of lex loci delicti for torts problems in order to reflect better what is actually being done and to provide a more realistic functional approach, in the following proposed conflicts rule:
"§ 379. General Principle.
"(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort."
"By the most conservative standards, the lex loci delicti conflicts rule, which looks mechanically to the law of the place of the injury, is no longer an adequate approach for the solution of all problems in connection with tort liability in conflicts cases; and our courts must take cognizance of this change as part of present-day growth and development in this field of law."
From our study of the foregoing cases, together with the pronouncements of Judge Tate and Professor Dainow, one feature emerges as indicative of a predominating philosophy in the Louisiana *382 field of conflicts, i. e., whenever possible, with due regard to fairness and justice. Louisiana courts are seeking to protect the rights of its own citizens, as well as citizens of other states where (1) its citizens are injured in an out-of-state accident or (2) out-of-state citizens are injured in Louisiana, where sufficent minimum contacts have been found to exist in Louisiana.
As in Webb we find in the case before us both plaintiff and defendant driver are residents of Louisiana; the automobile was owned and insured in Louisiana; the ill-fated trip originated in Louisiana and was to end in Louisiana and the suit is brought in Louisiana against the insured and his insurer who issued the policy in Louisiana. We conclude this evidence establishes the existence of more than the minimum contacts with Louisiana to give this court jurisdiction over defendants, as well as the right to apply the Louisiana law of negligence to the facts.
In view of this conclusion and in the light of appellees' admission of liability and coverage under Louisiana law we turn to a consideration of the matter of quantum of damages to which Mrs. Johnson is entitled. The evidence establishes Mrs. Johnson was sixty-three years of age at the time of the accident and was regularly employed by Selber Brothers Department Store as a saleslady at a salary of $200 per month. Mrs. Johnson was rendered unconscious by the blow when she was thrown into the windshield and she remained in an unconscious state until later that evening when she awoke in a Little Rock hospital. Testimony of the first treating physician was that Mrs. Johnson suffered severe lacerations of the head and face, broken ribs with possible damage to the lungs, lacerated knees and numerous bruises and contusions. He treated her primarily to stop the flow of blood and for shock and ordered her removed immediately to a Little Rock hospital by ambulance. There her lacerations were sutured, X-rays were taken to determine the extent of her internal injuries and she was hospitalized for eight days with frequent need for painkilling and other drugs and treatment. She returned to Shreveport and entered Willis-Knighton Hospital for further treatment and was discharged after a few days to return to her home to recuperate.
She remained away from her employment for approximately three months and returned to work on a limited basis since the bruises on the face, stiffness in her knees and headaches had not completely abated. She itemized her special damages for medical expenses, loss of eye-glasses, damage to clothing and loss of income, totaling $1,327.00. We find plaintiff has borne the burden of proving her entitlement to this amount. However, we find the record fails to justify an award of $2,000 requested for future medical expenses.
For pain and suffering, past disability, future pain and suffering and future disability and disfigurement she asks $45,000. According to the medical testimony plaintiff suffered greatly from headaches, pain in the chest while breathing or lying down and stiffness and soreness in her knees even after she became ambulatory, which was some weeks after the injury. Further, the lacerations and resulting scar or scars on her face were readily apparent and though the doctor would not testify they caused plaintiff to look "offensive" he did say they were disfiguring. For the three months of her convalescence plaintiff required help from her son, her daughter-in-law, grandchildren and neighbors. Further, she was unable to care for an invalid son who lived in the home with her. She testified she continues to have headaches and pain in her knees and can no longer perform her home and yard duties which she was admittedly performing before the accident. This testimony was corroborated by her neighbors and family. We consider the extensive nature of her injuries and the resulting pain, disfigurement and future disability entitle plaintiff to an additional award of $10,000.
*383 It is ordered the judgment appealed from be reversed and that plaintiff, Bessie Johnson, have judgment against defendants, Harley D. DeMoss and St. Paul Insurance Company, in solido, in the full sum of $11,327 with 5% interest thereon from judicial demand until paid, provided, however, the liability of St. Paul Insurance Company shall not exceed its policy limits. Defendants are further ordered to pay all costs of this suit.