# CELIA S. MYERS v. GOVERNMENT EMPLOYEES INSURANCE COMPANY AND OTHERS.
# ERNEST GAHLBECK AND ANOTHER v. SAME.

225 N. W. 2d 238.

December 27, 1974—No. 43965.

*Peterson & Holtze* and *Paul M. Heim,* for appellant.

*Thompson, Hessian, Fletcher, McKasy & Soderberg* and *David B. Morse,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ., and reconsidered and decided by the court en banc.

TODD, JUSTICE.

Defendant Government Employees Insurance Company (hereinafter referred to as GEICO) appeals from an order denying its motion to dismiss the complaints of plaintiffs on the grounds that the court lacks jurisdiction over the subject matter and that plaintiffs have failed to state a cause of action upon which relief can be granted. Discretionary review was granted by this court under Rule 105, Rules of Civil Appellate Procedure. The trial court determined that plaintiffs, residents of Minnesota, could bring direct action against defendant insurance company as provided by the Louisiana Direct Action Statute, the accident having occurred in that state. The trial court permitted the action to proceed under the Minnesota statute of limitations although

the Louisiana statute of limitations governing the tort had expired. The trial court further held that the complaints of plaintiffs stated a cause of action in fraud. We affirm.

A two-car collision occurred on February 20, 1969, near Berwick, Louisiana. One automobile, driven by plaintiff Celia S. Myers and in which plaintiffs Ernest Gahlbeck and his wife, Virginia M. Gahlbeck, were passengers, was owned by plaintiff Ernest Gahlbeck. The other vehicle was being operated by defendant Clara Chatterton and was owned by her husband, defendant W. S. Chatterton. The Chatterton vehicle was insured by GEICO, a District of Columbia corporation licensed to do business in both Louisiana and Minnesota. The Chattertons were residents and citizens of Louisiana. Plaintiffs, residents and citizens of Minnesota, were on a trip which originated and was to terminate in Minnesota.

After the accident, settlement negotiations between plaintiffs and GEICO were conducted in both Louisiana and Minnesota. Within 1 year of the accident, some payments were made to plaintiffs, but no settlement was reached and no release given. In response to plaintiffs' inquiry made about 15 months after the accident, GEICO responded that it was unable to further consider the claims because the Louisiana statute of limitations had run.[1]

On April 14, 1972, plaintiffs commenced actions in the District Court of Hennepin County against GEICO and the Chattertons, seeking relief against all defendants for personal injuries and against GEICO based on fraud. Service was made on GEICO in Minnesota by serving the commissioner of insurance as provided by statute.[2] No service has been made in Minnesota upon the Chattertons and there is no claim that personal jurisdiction over those defendants has been acquired by the Minnesota court.

---

[1] Louisiana Civil Code, Title 23, art. 3536, provides a 1-year statute of limitations on tort claims.

[2] Minn. St. 60A.19, subd. 1(3).

1. The first issue to be considered is whether plaintiffs can properly maintain a direct action against GEICO on the negligence issue when such actions are not permitted under Minnesota statutes. Plaintiffs base their claim on La. Rev. Stat. Title 22, § 655,[3] which allows a direct action against the tortfeasor's liability insurance carrier and Minn. St. 541.14, which provides:

"When a cause of action has arisen outside of this state and, by the laws of the place where it arose, an action thereon is there barred by lapse of time, no such action shall be maintained in

---

[3] La. Rev. Stat. Title 22, § 655, provides in part: "* * * The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the state of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.

"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insureds or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."

this state unless the plaintiff be a citizen of the state who has owned the cause of action ever since it accrued."

The trial court determined that the Louisiana statute permitting direct actions conferred substantive rights upon plaintiffs which could be brought in Minnesota against GEICO under the provisions of § 541.14. The trial court's decision and appellant's brief were filed prior to our decision in Milkovich v. Saari, 295 Minn. 155, 203 N. W. 2d 408 (1973). In that case, our court abandoned the "series of rules" test and replaced it with "choice-influencing considerations" in conflict situations. The latter, if a conflict of law exists, must now be applied to determine the issue.

2. Before applying the Milkovich standards, it must first be determined that a conflict exists, i. e., will the choice of one law as compared to another determine the outcome? Plaintiffs vigorously assert that no such conflict exists. This claim is based on the allegation that plaintiffs acquired a vested, substantive right against GEICO under La. Rev. Stat. Title 22, § 655, the direct action statute, which is enforceable under Minn. St. 541.14. GEICO contends that the rights conferred by the Louisiana statute are procedural and not substantive, relying on a decision of the Louisiana Court of Appeals, Second Circuit, which indicated that it regarded the statute as remedial in character rather than substantive. Finn v. Employers' Liability Assurance Corp. 141 So. 2d 852, 864 (La. App. 1962). The same court 7 years later, with a three-judge panel, two of whom had sat on the Finn case, indicated that the statute was basically substantive. Johnson v. St. Paul Mercury Insurance Company, 218 So. 2d 375 (La. App. 1969). However, this court regards the decision of the Louisiana Supreme Court in West v. Monroe Bakery, 217 La. 189, 46 So. 2d 122 (1950), as determinative of the issue. The Supreme Court of Louisiana there said (217 La. 191, 46 So. 2d 123):

"An analysis of our jurisprudence considered by the Appellate Court in reaching its conclusion discloses that with two excep-

tions Act 55 of 1930 [the forerunner of Title 22, Section 655] has been treated consistently as conferring *substantive rights* on third parties to contracts of public liability insurance, which become vested at the moment of the accident in which they are injured, *subject only to such defenses as the tortfeasor himself may legally interpose."*

See, also, Lumbermen's Mutual Casualty Company v. Elbert, 348 U. S. 48, 75 S. Ct. 151, 99 L. ed. 59 (1954); Collins v. American Automobile Insurance Company, 230 F. 2d 416 (2 Cir. 1956).

Having resolved that plaintiffs acquired substantive rights does not determine the absence of a conflict question. Professor Robert A. Leflar, whose choice-influencing considerations we adopted in Milkovich, commenting on Restatement, Conflict of Laws (2d), has addressed this question:

"* * * It has been said that when two states with differing relevant laws have contacts with a set of facts but the 'interest' of one of the states in the issues presented by the facts is negligible or substantially less than the 'interest' of the other state, there is a 'false conflict,' which again seems equivalent to saying that there is 'no conflict.' This language is used even though the laws of the two states are contradictory and a choice has to be made between them. The conclusion is that the law of the state with the greater 'interest' will prevail. That is an understandable conclusion and one supported by interest analysis. But it represents a situation in which there is a real conflict of laws, even though it may be a fairly easy conflict to resolve.

"The term 'false conflict' is a useful one provided we make clear which conflict is false. In the last illustration, the laws of the two states do conflict, but their governmental interests may not. In that situation we are not talking about a 'false conflict of laws,' which can exist only when the relevant laws of the two states are entirely consonant. Rather we are referring to a 'false conflict of governmental interests,' in which the relevant laws differ but only one state has a real or significant interest in the

facts and issues of the particular case. Insofar as governmental interest is the test (or part of the test) for choice of law, 'false conflict' in this latter sense is a legitimate concept. 'False conflict' is not, however, a test in itself; it is merely a statement of the court's conclusion after the governmental interest analysis has been applied to show that there is no conflict of governmental interests." Leflar, *The Torts Provisions of the Restatement (Second)*, 72 Col. L. Rev. 267, 275.

Thus, we conclude that there is a conflict of laws question which must be determined by the tests we adopted in Milkovich. Those tests are: (1) Predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.

3.　As pointed out in Milkovich, the first three tests present few problems in tort cases. Predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes. Similarly, maintenance of interstate order is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated. Likewise, the performance of the task is not complicated in this case. Therefore, we must focus our attention on the fourth and fifth tests.

4.　In determining the advancement of the forum's governmental interests, it is necessary that we not only analyze the interests of Minnesota as the forum state, but also consider the public policy of Louisiana. The Louisiana court in West v. Monroe Bakery, 217 La. 189, 209, 46 So. 2d 122, 130, quoting Davies v. Consolidated Underwriters, 199 La. 459, 476, 6 So. 2d 351, 357 (1942), said:

"* * * The [direct action] statute expresses the public policy of this State that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." (Italics omitted.)

Thus, it appears that the public policy of Louisiana is to protect the claims of the plaintiffs since the term "public" must necessarily include both residents and nonresidents of Louisiana. With respect to residents of Louisiana, there is an express legislative determination that an action must be commenced within 1 year. However, with respect to nonresidents, we can discern only a minimal interest, if any, of Louisiana as to the application of another state's statute of limitations in that state's courts.

5. Minnesota, as the justice-administering state, advances its governmental interest by providing access to its courts for its citizens and by considering its sociolegal policies as expressed by its legislature and courts. Upon examination, it is apparent that conflicting policies exist in Minnesota which must be resolved to determine what governmental interest is to be considered. Minn. St. 541.14 clearly indicates a legislative intent that plaintiffs' vested, substantive claims against GEICO should be heard by our courts when commenced properly within the limits of our statute of limitations, irrespective of the inability of plaintiffs to secure relief in another jurisdiction because of the bar of that particular jurisdiction's statute. Against this, we must consider the decisions of this court which prohibit direct actions against insurers. See, Gjovik v. Bemidji Local Bus Line, 223 Minn. 522, 27 N. W. 2d 273 (1947) ; and Miller v. Market Men's Mutual Insurance Co. 262 Minn. 509, 115 N. W. 2d 266 (1962). Those cases arose in actions by Minnesota residents against Minnesota defendants involving a Minnesota accident in which the claimants sought to name the insurer as a defendant. Those cases were decided in the absence of legislation permitting such procedure. There is no such legislative enactment at this time. In balancing these interests, it should be noted that in the past this court has permitted direct actions in our courts where the law of the situs of the accident permitted them. Kerston v. Johnson, 185 Minn. 591, 242 N. W. 329 (1932).

In considering Minnesota's interest in permitting its citizens

access to our courts, we said in Chubbuck v. Holloway, 182 Minn. 225, 228, 234 N. W. 314, 315 (1931):

"Is the difference between the Wisconsin statute and our law sufficient for declining jurisdiction? We think not. See Goodrich, Conflict of Laws, 196-200. Plaintiff has a cause of action under the Wisconsin statute. That right is property. He owns something. He asks us to help him get it. He is a citizen and resident of this state. Defendant is also domiciled within our borders. The property to be reached so far as we know is all in this state. Plaintiff should be entitled to come into the courts of his own state for redress of legal wrongs when jurisdiction may be acquired.

"Relative to the enforcement of a cause of action arising under a foreign statute, the court in Loucks v. Standard Oil Co. 224 N. Y. 99, 110, 120 N. E. 198, 201, in considering the difference between the foreign law and the law of the forum, said:

" 'Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance: Its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition. * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' "

Professor Leflar in *Conficto Law: More on Choice-Influencing*

*Considerations*, 54 Cal. L. Rev. 1584, 1587, comments on this fourth test, stating:

"If a forum state has a genuine concern with the facts in a given case, a concern discoverable from its strongly felt social or legal policy, it is reasonable to expect the state's courts to act in accordance with that concern. This refers to legitimate concerns, not just to the local occurrence of some facts, or to the local existence of some rule of law that could constitutionally be applied to the facts. A state's governmental interests in the choice-of-law sense need not coincide with its rules of local law, especially if the local rules, whether statutory or judge-made, are old or out of tune with the times. A state's total governmental interest in a case is to be discovered from all the considerations that properly motivate the state in its law-making and law-administering tasks, viewed as of the time when the question is presented. So viewed, the circumstances may show that the forum is truly interested in applying its own law to a set of facts. If they do show this that conclusion becomes a major choice-influencing consideration."

Applying these considerations, we hold that under these facts the predominant consideration of Minnesota as the forum state is the availability of our courts to our citizens to enforce their vested rights. We further hold that Minnesota's governmental interests are substantial and that we ought to exercise jurisdiction over the subject matter and defendant GEICO.

6. The remaining test under Milkovich is the application of the better rule of law. Concern for the "better law" is part of a comprehensive test and is to be exercised only when other choice-influencing considerations leave the choice of law uncertain. Here, the vested rights of plaintiffs granted by Louisiana statute are enforceable under the Minnesota statute and Minnesota's governmental interest dictates that we should permit such enforcement. Therefore, we need not consider or make any choice of better law under the facts of this case.

Having determined that plaintiffs may proceed with their negligence claims against GEICO, we need only observe that we are in accord with the trial court's decision that the complaints properly presented a jury question on the issue of fraud.

Affirmed.

KELLY, JUSTICE (concurring specially).

Conceivably it might be argued that Louisiana by maintaining its 1-year statute of limitations does have an interest in having its statute of limitations applied as to its resident defendants and an insurance company licensed and authorized to do business in Louisiana might come within this classification. Thus, I see no harm in discussing the application of the better rule of law.

In my view, the circumstances of this case do not evidence as strong a preference for Minnesota law over another state's law permitting direct actions against insurers as did the cases involving foreign guest statutes or intrafamily tort immunity. Although we do not have a statute permitting direct actions against insurers, the maintenance of such an action does not run sharply counter to my concepts of fairness and equity. Neither am I prepared to say that our rule is better in all instances.[1] I believe that to resist the application of another state's law under circumstances such as this, it must appear not merely that we have a different policy in this state, but that our policy is deeply and unequivocally engrained both socially and legally and is clearly the better rule. The determination of liability between parties

---

[1] It is interesting to note that the Supreme Court of Florida overruled its prior case law and held that in an action for damages from the alleged negligent operation of an insured automobile by its insured owner, the plaintiff as a third-party beneficiary of the motor vehicle liability policy has a direct cause of action against the insurer. Shingleton v. Bussey, 223 So. 2d 713 (Fla. 1969). See and compare Simmon v. Iowa Mutual Casualty Co. 3 Ill. 2d 318, 121 N. E. 2d 509 (1954); Wheeler v. Creekmore, 469 S. W. 2d 559 (Ky. 1971).

before insurance coverage is revealed is not of such overriding interest. In fact, this policy is to a large extent a fiction since jurors usually know that there is insurance coverage and are often indirectly made aware of this at trial during the voir dire. Furthermore, it is no secret that the cost of this type of insurance is related to the monies paid by insurance companies on claims. Jurors as members of the general public are no doubt keenly aware of the high cost of automobile liability insurance and are mature enough and intelligent enough to keep their verdicts within reasonable limits.

It should be noted that a conclusion that Minnesota should apply its own law in this case may force plaintiffs to sue in Louisiana and thereby deprive them of a forum because their claim may be barred in Louisiana by its statute of limitations.

If we are to apply the better rule of law, it seems that a 1-year statute of limitations is much too short, particularly if, as claimed, plaintiffs were lulled into not taking any action because of the alleged fraud of the defendant. Even without delay caused by such alleged fraud, many accidents are not ripe for settlement as the true extent of personal injuries often is difficult of ascertainment in a year's time. Thus, the Minnesota statute of limitations appears to be a far better rule of law than the 1-year statute of Louisiana. Furthermore, application of this state's statute of limitations will advance this forum's governmental interests.

I would hold that the fifth test—application of the better rule of law—is met by applying the Louisiana law permitting direct actions against insurers and the 6-year statute of limitations of Minnesota rather than the 1-year statute of limitations of Louisiana. Even if the direct action law of Louisiana is not better than our law denying such direct action, this combination of laws will achieve a just result and will advance this state's interests of protecting its citizens from alleged fraud practiced in this forum.

The plaintiffs' further claims based upon fraud are an added

reason for determining that the district court of Minnesota has jurisdiction of the subject matter. Judicial economy dictates that all of their causes of action should be brought in the same lawsuit. The allegedly fraudulent actions complained of occurred in Minnesota and this state would normally assume jurisdiction of such an action. Minnesota law is clearly applicable to plaintiffs' alleged cause of action for fraud. Minnesota has a governmental interest in permitting its citizens to avail themselves of its courts for causes of action arising in Minnesota.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.