# JACQUELINE BEAUDETTE v. GARY H. FRANA.
# MARIAN E. GREEN v. ROBERT M. GREEN.

173 N. W. (2d) 416.

December 19, 1969—Nos. 41829, 41798.

*Mast, Kampmeyer & Sweetman* and *Hugh Sweetman, Jr.,* for appellant Beaudette.

*Lindquist & Vennum, Norman L. Newhall, Jr.,* and *Kenneth F. Kirwin,* for appellant Marian Green.

*Faegre & Benson, Wright W. Brooks,* and *George W. Flynn,* for respondent Frana.

*Robb, Van Eps & Gilmore* and *Douglas Dale Reid, Jr.,* for respondent Robert Green.

PETERSON, JUSTICE.

Two separate actions, consolidated on appeal, present a common issue of interspousal immunity from actions in tort. Plain-

tiff and defendant in each case are wife and husband, respectively, the wife claiming damages for personal injuries resulting from the husband's negligence in driving an automobile in which she was a passenger.[1] Summary judgment was entered against each plaintiff because of the existing rule of interpousal immunity.[2] Plaintiffs have appealed from these judgments.

Interspousal immunity is the last vestige of the judicially established rule of intrafamily immunity in actions for tort. Balts v. Balts, 273 Minn. 419, 142 N. W. (2d) 66, decided April 1, 1966, abrogated the immunity of an unemancipated child from an action by his parent for personal injuries resulting from the child's negligence in driving an automobile. The comprehensive opinion of Mr. Justice Otis, writing for the majority (273 Minn. 433, 142 N. W. [2d] 75), disavowed "intimating the abrogation of tort immunity in actions by a child against a parent or between husband and wife" and acknowledged that "[t]hese are relationships which may well involve different and distinguishable policy considerations."[3] Nevertheless, Silesky v. Kelman,

---

[1] In No. 41829 the parties were not married at the time the alleged cause of action either arose (April 12, 1968) or was commenced (June 4, 1968), but the parties were subsequently married on September 7, 1968, which was prior to entry of judgment. In No. 41798 the parties were married at all such times. These differences are unimportant in view of our disposition of the basic issue.

[2] The trial court, the Honorable William D. Gunn in each case, properly applied existing law, stating in its memorandum in No. 41798: "It is sufficient to say while the question of family immunity in this state has been in a state of flux, the latest decision by the Minnesota Supreme Court on the issue, Hovanetz v. Anderson, 276 Minn. 543, 148 N. W. 2d 564, declined to overrule the long established doctrine of interspousal immunity. The trial court here is bound by that decision. If there is to be a change in the law, it should come from the Supreme Court or, as the Supreme Court has suggested, from the legislature."

[3] Mr. Justice Sheran, dissenting, observed (273 Minn. 438, 142 N. W. [2d] 78) that "acceptance of the reasoning which supports this decision forecasts the end of immunity with respect to actions for damages incurred by a child and caused by the negligence of a parent, and suits

281 Minn. 431, 161 N. W. (2d) 631, decided September 27, 1968, likewise abrogated parental immunity in an action by an unemancipated child for personal injuries resulting from his mother's negligent operation of the family automobile because, as a majority of this court said (281 Minn. 438, 161 N. W. [2d] 635), "no shadow of difference in principle or policy has been shown to exist between the two situations."

Interspousal immunity temporarily withstood change in two post-Balts cases. In Silesky v. Kelman, *supra*, this court refrained from deciding the right of action of the injured child's father against the child's negligent mother for special damages incurred because, as to that issue (281 Minn. 443, 161 N. W. [2d] 638), there was no "full presentation in an adversary setting between litigants." In Hovanetz v. Anderson, 276 Minn. 543, 148 N. W. (2d) 564, decided per curiam on February 10, 1967—post-Balts but pre-Silesky—this court, in deference to legislative determination of the significant considerations of public policy, had declined to abrogate the immunity, but expressly reserved the issue for future consideration (276 Minn. 544, 148 N. W. [2d] 566):

"Without foreclosing a reexamination of the rule when an appropriate case compels us to do so, we believe the proper course is to suggest, as we have repeatedly implied, that the legislature consider the need and propriety of any change of the rule." [4]

---

for tort between husband and wife as well." Mr. Justice Rogosheske, concurring specially, expressed a more limited disagreement (273 Minn. 437, 142 N. W. [2d] 78): "* * * I find it difficult to justify going beyond stating the rules necessary to dispose of this case, except possibly to indicate our attitude toward the immunity rule when applied to intrafamily suits arising out of motor vehicle accidents." The writer of the instant opinion was not a member of the court at that time.

[4] As Mr. Justice Sheran had expressed it in his dissent to Balts v. Balts, 273 Minn. 419, 440, 142 N. W. (2d) 66, 80, if this matter of family immunities "had been referred, on any previous occasion, to the legislature for its attention with no action by it one way or the other, we would perhaps be justified in changing the rule of our decisions if we felt it to be clearly wrong."

The legislature, although made aware of the problem through its own procedures for that purpose,[5] did not consider this problem of family immunity in either a direct or comprehensive way.[6] It acted rather indirectly by the enactment of two statutes regulating the issuance of automobile liability insurance policies. L. 1969, c. 474, adopting a bill introduced in the Senate, prohibited the writing of household-exclusion clauses in such policies.[7] L. 1969, c. 713, a subsequent adoption of a House-introduced bill, authorized the inclusion of supplemental accident indemnity coverage for members of the insured's household in automobile liability policies, subject, however, to the approval of the insured.[8] Recovery under c. 474 has no monetary limit but

---

[5] Minn. St. 482.09(9) is the legislature's direction to the revisor of statutes to make a biennial report concerning "any statutory changes recommended or discussed or statutory deficiencies noted in any opinion of the supreme court" filed during the interim between regular legislative sessions. The revisor of statutes did make report of Hovanetz v. Anderson, 276 Minn. 543, 148 N. W. (2d) 564, in January 1969, at the outset of the last regular legislative session, specifically setting forth the above-quoted language.

[6] This legislative inaction is in marked contrast to the intensive legislative consideration of the subject of governmental immunity at the 1963-1964 regular session, following the 1962 decision in Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. (2d) 795. See, L. 1963, c. 798.

[7] The relevant portion, c. 474, § 1, coded as Minn. St. 72A.1491, subd. 1, provides: "No policy of automobile liability insurance as defined in Minnesota Statutes, Section 72A.141, written or renewed after July 1, 1969, shall contain an exclusion of liability for damages for bodily injury solely because the injured person is a resident or member of an insured's household or related to the insured by blood or marriage. Nothing contained in this section shall prohibit issuance of a policy excluding coverage for a named driver."

[8] C. 713, § 1, coded as Minn. St. 72A.1492, provides in part: "Subd. 4. 'Insured' means any person other than the named insured who is in or upon, entering into, or alighting from, the automobile insured and described in the policy with the express or implied permission of the named insured or the person operating the automobile with the express

is conditioned upon a finding of fault; conversely, c. 713 provides a minimum monetary limit and recovery is not conditioned on fault.

The failure of the legislature more completely to respond to the Hovanetz invitation, we think, does not so much indicate the legislature's indifference to the issue as it does its preference

---

or implied consent of the named insured, and also means members of the household of the named insured and a pedestrian struck by the insured vehicle.

"Subd. 5. 'Medical expense' means expenses for necessary medical, hospital, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, professional nursing and funeral expenses."

C. 713, § 3, coded as Minn. St. 72A.1494, provides: "Such supplemental insurance coverages shall as a minimum include:

"(a) Accidental death benefits of at least $10,000 payable upon the loss of life of the named insured which shall result directly from and independently of all other causes from bodily injury, other than sickness or disease or death resulting therefrom, caused by accident sustained by the named insured while occupying an automobile, or entering or alighting therefrom, or through being struck by a motor vehicle while a pedestrian, if death occurs within 90 days of the accident;

"(b) Indemnity of at least $60 per week for a period of at least 52 consecutive weeks during such period of time as the named insured is prevented from performing the usual duties of his regular occupation, by reason of injuries and disability accidentally sustained and arising while occupying an automobile, or entering, or alighting therefrom, or through being struck by a motor vehicle while a pedestrian. If the injured named insured is a housewife or is a person not gainfully employed at the time of the accident, the supplemental insurance coverage may provide that the indemnity per week and the number of weeks of indemnity may either or both be reduced 50 percent;

"(c) Indemnity to the named insured and to any other insured, irrespective of legal liability, for medical expenses in an aggregate amount of at least $2,000 for each such injured person, incurred within two years from the date of the accident by reason of bodily injuries arising out of the use of the automobile described in the policy, provided that no person shall be entitled to receive in the aggregate an amount exceeding his actual medical expenses."

that this court should itself resolve the issue. The legislature seemingly did evince interest in providing families with insured protection against the financial loss of death or injury to family passengers in the family automobile, a common loss-producing situation. The two enactments represent no more than a legislative hedge, however, against the only two alternatives of judicial action: If this court were to abrogate all family immunities in automobile cases, the automobile liability policy would be the means of providing such financial protection, or, if we were instead to retain any of the family immunities, the optional supplemental accidental coverages in the automobile liability policy would provide the protection. The legislature did not clearly resolve the basic question implicit in this insurance approach to automobile situations: Whether a social policy of protecting family members from loss is served best by the protection of liability insurance predicated upon proof of fault rather than by other forms of insurance payable without proof of fault. No consideration whatever was manifested, moreover, with respect to the full scope of intentional or unintentional torts that occur within a family relationship.

The conflicting social considerations in resolving the issue of intrafamily immunities were comprehensively examined in Balts v. Balts, 273 Minn. 419, 142 N. W. (2d) 66, and the decisions of other jurisdictions and the writings of commentators favoring abrogation of the rule were there collated. The favored rationale for abrogating any one of the family immunities, as adopted in Balts, is that the social gain of providing tangible financial protection for those whom an insured wrongdoer ordinarily has the most natural motive to protect transcends the more intangible social loss of impairing the integrity of the family relationship. Our prior decisions did not completely dismiss these latter considerations but discounted them in reliance upon the restraint of litigants and the resourcefulness of the judicial process.

The rationale and result of our most recent decisions as to parent-child immunity has ordained our decision to abrogate inter-

spousal immunity. Interspousal immunity, it is true, has been more firmly rooted in the common law, both historically and ideologically, based upon the unique unity of a husband and wife within the marriage relationship. These differences do not so distinguish the relationships of husband-wife and parent-child as to warrant a drastically different rule of immunity, but the shared interests of marriage partners at least warrant precautionary conditions.[9]

Collusion in making spurious claims is an undeniable temptation where a member of the family is insured, and the capacity and inducement for such fraud is undoubtedly greater between husband and wife than between parent and child. The capacity is greater because both are adults. The inducement is greater because an award to one spouse is in effect an increase in the family funds in which both share equally. An award to a wronged spouse upon a genuine claim may actually inure to the benefit of the wrongdoing spouse. A wrongdoing spouse, for the sake of his wronged spouse, may "cooperate" with her and not with the defendant insurer as the insurance policy may contractually require. There is in the situation of domestic accord based on fraud an insidious impairment of future trust between these persons. Where there is no such accord, on the other hand, the twin evil is domestic discord arising from litigation in an actual adversary setting. The integrity of the marriage relationship is endangered under either alternative. A minimum challenge to judicial resourcefulness will be to act promptly and firmly at any appearance of frivolous or fraudulent interspousal claims.

There is an intimate sharing of contact within the marriage

---

[9] The immunity of a child was abrogated without exception in Balts v. Balts, *supra*. The abrogation of parental immunity in Silesky v. Kelman, 281 Minn. 431, 161 N. W. (2d) 631, however, was subject to exception with respect to negligent acts involving an exercise of reasonable parental authority and negligent acts involving an exercise of ordinary parental discretion with respect to provision of food, clothing, housing, medical and dental services, and other care.

relationship, both intentional and unintentional, that is uniquely unlike the exposure among strangers. The risks of intentional contact in marriage are such that one spouse should not recover damages from the other without substantial evidence that the injurious contact was plainly excessive or a gross abuse of normal privilege. The risks of negligent conduct are likewise so usual that it would be an unusual case in which the trial court would not instruct the jury as to the injured spouse's peculiar assumption of risk.

Whether the abrogation of interspousal immunity for tort achieves the right balance of social interests will be tested by experience. The extent to which the right of interspousal action should be more explicitly conditioned, if at all, must likewise await the experience of future litigation.

We hold that the absolute defense of interspousal immunity in actions for tort is abrogated[10] prospectively, as to all causes of action arising after this date, and is abrogated as to the instant cases.

Reversed and remanded.

SHERAN, JUSTICE (dissenting).

Litigation by one spouse against another where recovery de-

---

[10] Prior decisions of this court inconsistent with this decision are expressly overruled, including Strom v. Strom, 98 Minn. 427, 107 N. W. 1047, 6 L. R. A. (N. S.) 191; Drake v. Drake, 145 Minn. 388, 177 N. W. 624, 9 A. L. R. 1064; Woltman v. Woltman, 153 Minn. 217, 189 N. W. 1022; Patenaude v. Patenaude, 195 Minn. 523, 263 N. W. 546; Kyle v. Kyle, 210 Minn. 204, 297 N. W. 744; Karalis v. Karalis, 213 Minn. 31, 4 N. W. (2d) 632; and Hovanetz v. Anderson, 276 Minn. 543, 148 N. W. (2d) 564. The effect of overruling Strom v. Strom, *supra,* and Drake v. Drake, *supra,* is to abrogate the unconditional immunity with respect to intentional torts just as it is for unintentional torts. This court long ago, in Woltman v. Woltman, *supra,* refused to apply one rule of liability for mere negligence but a different rule for wrongful conduct of an aggravated nature. Cf. the result in Thill v. Modern Erecting Co. 284 Minn. 508, 170 N. W. (2d) 865.

pends on proof of fault has always been considered contrary to the public policy of the state. In my judgment, the rule forbidding such law suits is based on reasons as sound today as when the prohibition was first announced. The fact that a liability insurance company may be required to pay the bill once fault is proved does not change the situation, in my view.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.