**George D. HIME, Respondent,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Appellant.**

**No. 48078.**

Supreme Court of Minnesota.

Aug. 17, 1979.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland and O. C. Adamson, II, Minneapolis, for appellant.

DeParcq, Anderson, Perl, Hunegs & Rudquist, F. Dean Lawson, Stephen S. Eckman, and Russell A. Ingebritson, Minneapolis, Jack Davies, Professor of Law, William Mitchell College of Law, St. Paul, for respondent.

WAHL, Justice.

Defendant State Farm Fire & Casualty Company appeals from the order for summary judgment and judgment of the Hennepin County District Court, which set aside the family exclusion clause and ordered State Farm to indemnify its insured, George Hime, for a judgment against him for damages suffered by his wife arising from an automobile accident in Minnesota. We affirm.

On December 5, 1966, appellant issued an automobile insurance policy to respondent, a Florida resident. The policy recognized that the insured automobile would be principally garaged in Florida. It also contained the following intra-family liability exclusion, the enforceability of which is the subject of this litigation:

"[State Farm agrees] (1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury by other persons * * *.

"[Exclusions] (1) coverage A, to bodily injury to the insured or to any member of the family of the insured residing in the same household as the insured * * *."

The policy was renewed annually. Respondent and his wife resided at all times in the same Florida household.

On August 3, 1972, automobiles driven by respondent and a Minnesota resident were involved in a two-car accident in Minnesota. Respondent's wife, a passenger in respondent's car, was seriously injured and commenced suit against both drivers in Minnesota court. Gladys Hime was awarded damages in the amount of $38,000, which were apportioned according to negligence in the amount of 60 percent or $22,800 against respondent, and 40 percent against the Minnesota driver. Appellant refused to defend or indemnify respondent because of the intra-family liability exclusion but paid Gladys Hime $4,424.25 in no-fault benefits pursuant to applicable Florida law.

Respondent commenced this indemnification action against appellant on June 11, 1976, prevailing in cross-motions for summary judgment before the trial court.

The issue on appeal is whether the trial court erred in applying Minnesota law to render ineffective the Florida insurance contract clause that excluded automobile liability coverage for intra-family claims.

The jurisdiction of the Minnesota courts over this matter being conceded, we limit our review to the conflict of laws

question presented by this case.[1] To resolve this conflict, we consider initially whether the contacts with Minnesota are sufficient to make application of Minnesota law consistent with due process. Such contacts must not be too slight and casual. See, *Clay v. Sun Ins. Office, Ltd.,* 377 U.S. 179, 182, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964).

■ The contacts in this case arise both from the contract of insurance and from the tort, which initiates the insurer's performance of the contract. We do not restrict our review to the contacts arising from the contract. To do so would be to ignore the unique nature of automobile liability insurance. As the Supreme Court has recognized:

> "Insurance companies * * * do not confine their contractual activities and obligations within state boundaries. They sell to customers who are promised protection in States far away from the place where the contract is made." *Clay v. Sun Ins. Office, Ltd.,* 363 U.S. 207, 221, 80 S.Ct. 1222, 1230, 4 L.Ed.2d 1170 (1960) (Black, J., dissenting), quoted in *Clay v. Sun Ins. Office, Ltd.,* 377 U.S. 179, 182, 84 S.Ct. 1197, 1199, 12 L.Ed.2d 229.[2]

Moreover, the automobile liability insurance contract contemplates the occurrence of a tort. The transaction is a hybrid, overlapping the laws of tort and contract. See, *Allstate Insurance Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550, 558 (1973).

■ The contacts with the State of Florida arise from the contract itself. The contract was issued in Florida to a Florida resident on a vehicle principally garaged in Florida. Presumably, the premiums were paid in Florida. The contacts with the State of Minnesota, however, are significant. The appellant is licensed to do business in Minnesota and is subject to suit in our courts. The accident occurred here and involved a Minnesota resident in a Minnesota vehicle. The non-resident who was injured was hospitalized and treated in this state. Suit against both drivers was commenced here, and the case was tried in the courts of this state. We find these contacts with Minnesota sufficient to ensure that application of Minnesota law in this case would not offend due process.

■ Having concluded that due process would not be violated by application of Min-

1. The choice between the Minnesota and Florida laws is determinative of the outcome of this case. The Florida courts have recognized the validity of provisions of automobile liability insurance policies that exclude from coverage members of the insured's family or household. See, e. g., *Reid v. Allstate Insurance Co.,* 344 So.2d 877 (D.C.A.Fla.1977), affirmed, *Reid v. State Farm Fire & Casualty Co.,* 352 So.2d 1172 (Fla.1977). To the contrary, Minnesota law has prohibited household or family exclusions in automobile liability insurance policies since 1969. See, Minn.St. 65B.23, repealed by Laws 1974, c. 408 § 33. Under the current Minnesota no-fault automobile insurance act, family and household members are included in the statutory definition of "insureds." See, Minn.St. 65B.43, subd. 5.

2. We note also the Supreme Court's decision in *Watson v. Employers Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954). *Watson* involved a suit on an insurance policy issued by a Massachusetts insurance company and delivered in Massachusetts and Illinois, which contained a clause prohibiting direct actions against the insurance company. The plaintiff was injured by the product of the insured in Louisiana and sued the insurance company under Louisiana's direct action stat-

ute. The Supreme Court reversed the dismissal of the suit on the ground that Louisiana had a "legitimate interest in safeguarding the rights of persons injured there," 348 U.S. 73, 75 S.Ct. 170. The opinion recognized the interstate aspects of the case before it:

"Some contacts made locally, affecting nothing but local affairs, may well justify a denial to other states of power to alter those contracts. But, as this case illustrates, a vast part of the business affairs of this Nation does not present such simple local situations. Although this insurance contract was issued in Massachusetts, it was to protect * * * against damages on account of personal injuries that might be suffered * * * anywhere in the United States * * *. As a consequence of the modern practice of conducting widespread business activities throughout the entire United States, this Court has in a series of cases held that more states than one may seize hold of local activities which are part of multistate transactions and may regulate to protect interests of its own people * * *."

Thus, despite the contract clause prohibiting direct actions, petitioner's direct action was permitted.

nesota law, we apply our choice of law rules set forth in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973) to determine which law governs in this case.[3] See, *Schwartz v. Consolidated Freightways Corp. of Del.,* 300 Minn. 487, 221 N.W.2d 665, 668 (1974). Under *Milkovich,* policy considerations as well as contacts must be analyzed. *Schwartz,* 295 Minn. 155 at 493, 221 N.W.2d at 669. Five choice-influencing considerations are involved: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.

■ Unlike the typical tort case, where only advancement of the forum's governmental interest and application of the better rule of law are relevant (see, e. g., *Schwartz*), this case, with traits of both torts and contract, requires consideration of all five factors. see, *Hague v. Allstate Insurance Co.* (Minn.1978), filed April 7, 1978.

(1) Predictability of Results.

■ As we observed in *Hague, supra,* the unplanned nature of automobile accidents lessens the importance of predictability of results in automobile insurance cases. Nevertheless, we note that the insured's protection has no geographical boundaries, at least not under the policy before us, and it is foreseeable that the insured may meet his misfortune out of the state of issuance. It was neither unusual nor unpredictable that the insured in this case, a former Minnesota resident, returned to visit his former home and that his vehicle was involved in an accident there. As was the case in *Clay v. Sun Ins. Office, Ltd., supra,* the contract here in issue did not provide that the law of the issuing state would govern suits filed in other states. The transaction was not planned to have predictable results, and the insurer is not now justified in expecting Florida law to govern absolutely in light of the extra-territorial effect and unique nature of the automobile insurance contract.

As we said in *Myers v. Government Employees Insurance Co.,* 302 Minn. 359, 365, 225 N.W.2d 238, 242 (1974), predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes. This is not such a case.

(2) Maintenance of Interstate Order.

■ This concept involves consideration of the sufficiency of contacts between the forum state and the transaction. See, *Hague, supra.* The contacts that we have found sufficient to satisfy the due process also support application of Minnesota law under this choice-influencing consideration. In light of these facts, respondent cannot be regarded as simply forum-shopping with little genuine contact with the state.

(3) Simplification of the Judicial Task.

Because the Minnesota and Florida laws on the enforceability of the contract clause, which is central to this appeal, are equally clear, though contrary to each other, this consideration is not significant in this case. Either law could be applied without practical difficulty.

(4) Advancement of the Forum's Governmental Interest.

■ Our concern here, as in *Milkovich v. Saari, supra,* is that Minnesota courts not be called upon to determine issues under rules, which, however accepted they may be in other states, are inconsistent with our own concept of fairness and equity. To apply Florida law in this case would be adverse to that interest, for the courts and legislature of this state have condemned household immunity clauses. See, Minn.St. 65B.23, repealed by Laws 1974, c. 408 § 33. See, also, *Beaudette v. Frana,* 285 Minn. 366, 173 N.W.2d 416 (1969), where we abrogated interspousal immunity in actions for tort. Providing recovery to those injured and treated within our borders is a legitimate state interest that was recognized by the Supreme Court in *Watson v. Employers*

---

**3.** The efforts of the amicus curiae do not go unnoticed. While the amicus concisely and articulately sets forth an alternative approach to the resolution of conflicts questions we are not persuaded that the alternative is preferable to the *Milkovich* analysis.

**834**

*Liability Assurance Corp.,* 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954). By applying Florida law to this controversy, respondent's wife, while holding a $22,000 judgment against her husband, would in effect be denied recovery. This result offends our idea of fairness and defies our concern for the welfare of visitors to this state.

(5) Better Rule of Law.

 Because the foregoing considerations weigh in favor of applying Minnesota law, we need not dwell on this fifth factor. We simply note our reasoning in *Beaudette v. Frana, supra.* There we recognized that the social gain of providing tangible financial protection for those whom an insured wrongdoer ordinarily has the most natural motive to protect transcends the more intangible social loss of impairing the integrity of the family relationship. Similarly, this same social gain transcends the arguable social loss of impairing insurance contract provisions that provide for familial exclusions. The sanctity of such a contractual relationship is already diminished by the relative absence of free negotiation, perhaps approaching the nature of a contract of adhesion. See, Ehrenzweig, 53 Colum.L.Rev. 1072, 1082 (1953). Our application of the *Milkovich* considerations leads us to conclude that Minnesota law should govern resolution of this controversy.

Affirmed.

OTIS, Justice (concurring specially).

I have no difficulty in distinguishing this case from *Hague v. Allstate* (Minn.1978), filed April 7, 1978, where Minnesota as the forum state had literally no contacts with any of the parties which were related to the accident when it occurred. For the reason set forth in the dissent, in my opinion that decision applied the better rule of law unconstitutionally.

Here, on the other hand, the contacts of the parties with the State of Minnesota are substantial and there is every reason to apply what we all agree is the better Minnesota rule. Not only did the insured have ties with this state as a former resident

visiting here, but the other driver was a resident of Minnesota; the accident occurred in Minnesota; and the injured party was treated in Minnesota. None of these contacts was present in the *Hague* case however.