James C. LINDQUIST, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. C6–87–1015.

Court of Appeals of Minnesota.

Nov. 10, 1987.

Thomas A. Klint, Randall J. Fuller, Babcock, Locher, Neilson & Mannella, Anoka, for appellant.

V. Owen Nelson, Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Respondent State Farm Mutual Automobile Insurance Company denied appellant James Lindquist no-fault insurance benefits, claiming his policy was not in effect at the time of the accident. The matter came before the district court for a declaration of applicable law. The district court declared that Minnesota, not Tennessee, law applied. At trial Lindquist contended State Farm did not give him 60 days' notice of its intent not to renew his policy and that such notice was required by Minn.Stat. § 65B.17, subd. 1 (1986).

The trial court determined that the statute was applicable, but that State Farm had manifested a willingness to renew the policy and thus fell within an exception to that section's 60–day notice requirement. *See* Minn.Stat. § 65B.17, subd. 1(a) (exception). The trial court also found that Lindquist had failed to take the necessary steps to transfer or continue his policy. On the basis of those findings, the trial court held that Lindquist's automobile policy terminated on July 12, 1984, and thus did not entitle him to benefits pursuant to that policy.

Lindquist appealed the former finding, and State Farm sought review of the district court's determination of applicable law. We affirm the trial court's decision that Lindquist's policy was effectively terminated on July 12, 1984, but on the latter ground only.

## FACTS

Lindquist sustained injuries in an automobile accident which occurred on July 22, 1984, in Anoka County, Minnesota. He applied for basic economic loss benefits, pursuant to the Minnesota No-Fault Automobile Insurance Act, with his insurer, State Farm. State Farm denied no-fault coverage on the ground that Lindquist's coverage had terminated on July 12, 1984.

Lindquist bought an automobile insurance policy with State Farm while he was residing in Tennessee. He moved to Minnesota with the intent to remain on a temporary basis and notified State Farm of his new address in January 1984. In March 1984 he made a premium payment to State Farm's Tennessee office. State Farm renewed the policy for the period from January 12, 1984, to July 12, 1984.

In February 1984 State Farm began mailing Lindquist letters indicating that he would need to transfer his policy to his new state of residence, Minnesota. The letters warned that State Farm could not continue his coverage without that transfer. Lindquist admitted he knew he had to complete a new application with a Minnesota State Farm agent to transfer his policy. He claims he completed an "application to transfer" form and returned it to State Farm's Tennessee office. However, State Farm presented evidence that it does not use any document that meets the description of an "application to transfer form" and never received a new application. Therefore, on May 29, 1984, State Farm's Tennessee office mailed Lindquist a "notice of intent not to renew" informing him that State Farm would not renew his policy effective July 12, 1984.

## ISSUES

1. Does Minnesota contract law govern whether State Farm provided the requisite notice of its intent not to renew the insured's policy?

2. Was State Farm's notice sufficient to terminate effectively the insured's automobile insurance policy?

3. Did the district court's denial of State Farm's summary judgment motion establish the law of the case?

## DISCUSSION

### I

■ This case presents a conflict between Minnesota and Tennessee law. Tennessee law requires only 20 days' notice of intent not to renew. Tenn.Code Ann. § 56–7–1304 (1980).

Minn.Stat. § 65B.17, subd. 1 (1986), provides:

No insurer shall fail to renew an automobile insurance policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least 60 days advance notice of its intention not to renew.

The trial court erred in applying Minn. Stat. § 65B.17, subd. 1, to this case. A "policy," to be within the meaning of section 65B.17, must be "delivered or issued for delivery *in this state.*" Minn.Stat. § 65B.14, subd. 2 (1986) (emphasis added). The policy was delivered in Tennessee.

Minnesota common law of contract may, however, be applicable here in the absence of controlling Minnesota statutory law. *See Lang v. General Insurance Co. of America,* 268 Minn. 36, 40, 127 N.W.2d 541, 544 (1964). Under common law, an insurance policy's terms determine both the rights and obligations of the parties. *Olson v. Rugloski,* 277 N.W.2d 385, 387 (Minn.1979). Here the insurance policy's terms required State Farm to mail written notice of its intention not to renew at least 30 days before the end of the current policy period.

■ In resolving whether to apply Minnesota or another state's law in automobile insurance coverage cases, the court must engage in a two-step process. First, the court must ask whether due process would be offended by the application of Minnesota law. *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829, 831–33 (Minn.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). Second, the court must determine whether, under conflict-of-laws rules, Minnesota law should govern the controversy. *Id.* at 832–33.

### A. Due Process Considerations

■ The constitutional application of a particular state's substantive law requires that the state have significant contact or a significant aggregation of contacts, creating state interests, such that the choice of its law is neither arbitrary nor fundamentally unfair. *Allstate Insurance Co. v.*

*Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). Such contacts must not be too slight and casual. *See Clay v. Sun Insurance Office, Ltd.,* 377 U.S. 179, 182, 84 S.Ct. 1197, 1199, 12 L.Ed. 2d 229 (1964).

In examining the due process issue, we must focus on the contacts arising from both the insurance contract and the automobile accident. *Hime,* 284 N.W.2d at 832. State Farm urges us to carve out an exception to this rule and examine only the contacts related to the insurance contract when issuance, renewal, or cancellation of a policy is at issue. We decline to do so.

In *Hime* the Minnesota Supreme Court stated:

We do not restrict our review to the contacts arising from the contract. To do so would be to ignore the unique nature of automobile liability insurance. As the Supreme Court has recognized:

"Insurance companies * * * do not confine their contractual activities and obligations within state boundaries. They sell to customers who are promised protection in States far away from the place where the contract is made." [*Clay v. Sun Insurance Office, Ltd.,* 377 U.S. 179, 182, 84 S.Ct. 1197, 1199, 12 L.Ed.2d 229 (1964) (citing *Clay v. Sun Insurance Office, Ltd.,* 363 U.S. 207, 221, 80 S.Ct. 1222, 1231, 4 L.Ed.2d 1170 (1960) (Black, J., dissenting))].

Moreover, the automobile liability insurance contract contemplates the occurrence of a tort. The transaction is a hybrid, overlapping the laws of tort and contract.

*Id.* (footnote omitted).

■ As the district court concluded, in this case the contacts with Minnesota are extensive. The application of Minnesota law will not offend due process. State Farm is licensed to do business and is doing business in Minnesota. *See Hague,* 449 U.S. at 317, 101 S.Ct. at 642. The accident that gave rise to the lawsuit occurred in Minnesota and involved a Minnesota automobile. *See Hime,* 284 N.W.2d at 832. Lindquist was treated in Minnesota

for his injuries. *See id.* Furthermore, Lindquist became a resident prior to institution of this litigation. *See Hague,* 449 U.S. at 318, 101 S.Ct. at 643. This aggregate of contacts creates such state interests that application of Minnesota law is neither arbitrary nor fundamentally unfair. *See id.* at 320, 101 S.Ct. at 644.

### B. Application of Choice-of-Law Rules

█ Having determined that the application of Minnesota law would not offend due process, the next step is to apply the choice-of-law rules set forth in *Milkovich v. Saari,* 295 Minn. 155, 203 N.W.2d 408 (1973), to determine whether Minnesota or Tennessee law governs. The five choice-influencing considerations involved are (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law. *Hime,* 284 N.W.2d at 833–34.

### 1. Predictability of Results

█ The unplanned nature of automobile accidents lessens the importance of predictability of results in automobile insurance cases. *Id.* at 833. Predictability of results applies primarily to consensual transactions where the parties desire advance notice of which state's law will govern future disputes. *Id.* Lindquist's protection had no geographical boundaries, and it was foreseeable that he might meet his misfortune out of Tennessee, the state of his insurance. *See id.* The insurance contract did not specify that Tennessee law would govern suits filed in other states. Therefore, State Farm is not now justified in expecting Tennessee law "to govern absolutely in light of the extra-territorial effect and unique nature of the automobile insurance contract." *See id.*

### 2. Maintenance of Interstate Order

This concept requires that Minnesota have sufficient contacts with the facts in issue before applying its law. *Hime,* 284 N.W.2d at 833. The contacts here that are sufficient to satisfy due process also support application of Minnesota law under this choice-influencing consideration. *See id.*

### 3. Simplification of the Judicial Task

Simplification of the judicial task is not significant on these facts, because either the policy's terms or Tennessee's law could be applied without practical difficulty. *See Hime,* 284 N.W.2d at 833.

### 4. Advancement of the Forum's Governmental Interest

The concern under this consideration is that Minnesota courts not be required to determine issues under rules which, although acceptable in other states, are inconsistent with our own concept of fairness and equity. *Hime,* 284 N.W.2d at 833. Providing recovery to persons injured and treated within Minnesota's borders is a legitimate state interest. *Id.* In addition, Minnesota has a strong interest in preventing lapses of automobile insurance. *Dairyland Insurance Co. v. Neuman,* 338 N.W. 2d 37, 41 (Minn.1983).

The policy's 30–day notice requirement allows an insured more time than the Tennessee statute within which to obtain alternative insurance coverage. This time margin clearly does more to advance this state's interests.

### 5. The Better Rule

As with advancing the forum's interest, following the policy's language in this case is the better rule of law. The policy provides for a longer notice period than does Tennessee law.

### II

█ State Farm's notice was sufficient to satisfy the contract's 30–day, written notice requirement. In accordance with its standard operating procedure, State Farm mailed Lindquist three or more letters indicating that he needed to transfer his policy to Minnesota. Lindquist received at least one of the letters which stated that State Farm could not continue his coverage at his previous address and that to continue cov-

erage he would have to complete a new application for insurance by contacting an agent in Minnesota. State Farm provided him with the name, address and telephone number of an agent to contact.

On May 29, 1984, more than 30 days before the expiration of Lindquist's policy, State Farm mailed him a "notice of intent not to renew." Lindquist received that notice informing him that the sole reason for the action was that State Farm had not received an application to transfer his record to State Farm's Minnesota office. State Farm's notice, as a matter of law, satisfied the insurance contract's requirements. *Cf.* Minn.Stat. §§ 65B.14, subd. 2; 65B.17, subd. 1 (1986) (notice of intention not to renew policy *delivered in state* must contain specific reason for nonrenewal) (emphasis supplied).

Applying Minnesota law, we hold that Lindquist's automobile insurance coverage was effectively terminated on July 12, 1984. Lindquist did not comply with the requisite transfer procedures. Further, State Farm adhered to the terms of the insurance policy, providing at least 30 days' written notice of its intention not to renew. On this basis, Lindquist is not entitled to benefits under the policy.

## III

Before trial, Lindquist sought a declaration that Minnesota statutory law controls whether State Farm provided the requisite notice to Lindquist in its notice of intent not to renew. State Farm brought a cross-motion for summary judgment, arguing that it had manifested a willingness to renew Lindquist's automobile insurance policy and thus was excepted from the 60-day notice requirement of Minn.Stat. § 65B.17, subd. 1 (1986). The district court ruled that Minnesota, not Tennessee, statutory law governs, and State Farm's motion for summary judgment was denied. At trial the trial court agreed with State Farm's position on its willingness to renew. Lindquist contends on appeal that the district court's previous order denying State Farm's summary judgment motion established the law of the case and prevented

the trial court from relitigating the issue of State Farm's willingness to renew. Because we hold that Minn.Stat. § 65B.17, subd. 1 (1986), is inapplicable on the facts of this case, we need not reach this issue.

## DECISION

Minnesota common law of contract governs this action. The trial court erred in applying Minn.Stat. § 65B.17, subd. 1 (1986), to these facts. The contract language is controlling. State Farm complied with the contract's notice requirements; therefore, the insured is not entitled to benefits under the policy.

Affirmed.