**Jill NESLADEK, as Trustee for the Heirs and Next of Kin of Jeremy J. Nesladek, Decedent, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. No. 5–93–106.**

United States District Court,
D. Minnesota,
Fifth Division.

March 7, 1994.

William H. McDonald and William R. Robb, Woolsey, Fisher, Whiteaker & McDonald, Springfield, MO, Eric W. Kruger, Omaha, NE, and Steven W. Schneider, Halverson, Watters, By, Downs, Reyvelts & Bateman, Duluth, MN, for plaintiff.

Hildy Bowbeer and Courtney G. Sylvester, Bowman and Brooke, Minneapolis, MN, and Douglas Laird, Polsinelli, White, Vardeman, & Shalton, Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

KYLE, District Judge.

Before the Court are three motions:[1] plaintiff Jill Nesladek's motion to certify a question of law to the Minnesota Supreme Court; defendant Ford Motor Company's ("Ford") motion to transfer venue; and Ford's motion for summary judgment. Plaintiff's motion for certification will be denied; defendant's motion for summary judgment will be granted, and defendant's motion to transfer venue will be denied as moot.

### BACKGROUND

Jill Nesladek brought this action on behalf of her decedent, Jeremy J. Nesladek, who died from injuries suffered in an accident that occurred near West Point, Nebraska. On April 18, 1990, plaintiff's husband, Ken Nesladek, prepared to take his two sons to daycare. Mr. Nesladek placed one of his sons in his Ford pickup truck and noticed that his other son, Jeremy, had pulled his toy

---

1. The motions were argued by counsel on December 10, 1993. Shortly thereafter, the Court was advised that the parties were engaged in settlement discussions and the Court was requested to defer a ruling on the then pending motions. On February 28, 1994, the Court was advised that such discussions had not been successful.

wagon behind the truck. Mr. Nesladek left the cab of the truck to move the toy. Before Mr. Nesladek had returned to the cab, the truck rolled backward over Jeremy. Jeremy died from his injuries on February 20, 1992.

Nesladek claims that the truck "jumped" from park to reverse due to defects in certain components of the steering column. The vehicle at issue is a composite of two Ford trucks, one a 1973 model and the other a 1976 model. In 1989, Mr. Nesladek, with the assistance of Gerald Kreikemeier, replaced the cab portion of the 1973 truck with the cab from the 1976 truck.[2] The parties dispute from which truck the allegedly defective components originated. Nesladek claims that the relevant components were part of the 1976 truck, manufactured and assembled in Minnesota. Ford counters that the steering column components in the modified vehicle were taken from the 1973 truck, manufactured in Michigan. Alternatively, Ford responds that the steering column components from the 1976 truck, even if implicated in the accident, were manufactured and assembled into one unit in Indiana and installed as a unit into the 1976 truck in Minnesota.

At the time of the accident, plaintiff, her husband and her decedent resided in Nebraska. Following the decedent's death, Nesladek moved to Minnesota and thereafter commenced this action. In her complaint, Nesladek alleges the following claims: 1) breach of warranty; 2) strict liability; 3) failure to warn; 4) breach of duty to recall; and 5) negligence. Ford moves for summary judgment on the grounds that Nesladek's action is time-barred under Nebraska's statute of repose for products liability actions. Ford also moves to transfer venue to the United States District Court for the District of Nebraska under 28 U.S.C. § 1404(a). Nesladek moves to certify to the Minnesota Supreme Court the question of whether the Nebraska statute of repose is a procedural or substantive rule of law.

---

**2.** Ford contends that an improper adjustment by Mr. Kreikemeier, rather than a design defect, caused the accident.

**3.** The parties do not dispute that this case is a products liability action subject to this statute

*DISCUSSION*

**I. PLAINTIFF'S MOTION FOR CERTIFICATION OF A LEGAL QUESTION TO THE MINNESOTA SUPREME COURT.**

Nesladek moves, pursuant to Minn.Stat. § 480.061 (1992), to certify to the Minnesota Supreme Court the issue of whether Nebraska's products liability statute of repose is substantive or procedural for choice of law purposes. The Nebraska statute states:

Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2–725, Uniform Commercial Code or by subsection (5) of this section [dealing with asbestos claims], shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption.

Neb.Rev.Stat. § 25–224(2).[3]

Because both of the Ford trucks forming the vehicle at issue were sold more than ten years before Nesladek commenced this action, application of this statute would bar Nesladek's claim.[4] Minnesota has no similar statute. Nesladek argues that because Minnesota courts have not previously characterized a statute of repose, no precedent exists to guide this Court's analysis, rendering certification to the supreme court appropriate.

A federal district court sitting in diversity must apply the rules of state law which it believes the state's own courts would apply. *Independent School Dist. No. 197 v. W.R. Grace & Co.*, 752 F.Supp. 286, 298 (D.Minn.1990). A federal district court may certify to the state's supreme court those questions of law which appear determinative of the pending cause of action and relating to which no controlling precedent exists to

---

should the Court determine that Nebraska law governs.

**4.** Regardless of which date of sale—1973 or 1976—triggers the statute, the limitations period expired at the latest in 1986.

guide the district court. *Id.* A federal court shall not, however, invoke certification to avoid resolving the issues before it, "[a]bsent a close question and lack of state sources enabling a nonconjectural determination." *Shakopee Mdewakanton Sioux v. City of Prior Lake,* 771 F.2d 1153, 1157 n. 2 (8th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986).

■ Although the Minnesota Supreme Court has not expressly characterized a products liability statute of repose, it has identified principles by which to distinguish between procedural rules and substantive rights. Procedural rules affect a plaintiff's remedy, or the ability to enforce existing rights and obtain redress for their invasion. *Stern v. Dill,* 442 N.W.2d 322, 324 (Minn. 1989). Substantive law, in contrast, "creates, defines and regulates rights." *Id.* The basic tenets of Minnesota law provide a framework within which this Court can sufficiently analyze Nebraska's statute of repose. The Court also may look for guidance to Nebraska's characterization of its own statute. *Anderson v. State Farm Mut. Auto. Ins. Co.,* 222 Minn. 428, 24 N.W.2d 836, 839 (1946); *Mason v. Spiegel, Inc.;* 610 F.Supp. 401, 404 n. 2 (D.Minn.1985). To certify the question would unnecessarily consume resources and delay this matter. Therefore, Nesladek's motion for certification of a legal question will be denied.

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Ford moves for summary judgment on the grounds that Nebraska's products liability statute of repose bars plaintiff's action.

■ Pursuant to Fed.R.Civ.P. 56(c), a district court may grant summary judgment if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of establishing the non-existence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552; *City of Mr. Pleasant, Iowa v. Assoc. Elec. Co-op.,* 838 F.2d 268, 273 (8th cir.1988). Once it meets

that burden, the nonmoving party may not then "rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Ford contends that Nebraska's statute of repose is a substantive rule of law which governs this matter under Minnesota's choice of law principles. The Nebraska statute bars a products liability action commenced more than ten years after the product which allegedly caused the injury was first sold or leased for use or consumption. Neb.Rev. Stat. § 25–244(2). If applicable, this statute would bar the instant action as a matter of law and summary judgment for Ford would be appropriate.

■ Under Minnesota choice of law analysis the Court initially must determine whether a conflict exists, or in other words, whether the choice of one law over the other will determine the outcome. *Myers v. Gov't. Employees Ins. Co.,* 302 Minn. 359, 225 N.W.2d 238, 241 (1974). Because Nebraska law would bar this action and Minnesota law would not, a conflict exists. *See Kearns v. Am. Family Ins. Group,* 486 N.W.2d 796, 798 (Minn.Ct.App.1992).

■ Next, the Court must characterize Nebraska's statute of repose as either a substantive or procedural rule of law. If procedural, the law of the forum, or Minnesota law, applies. *Davis v. Furlong,* 328 N.W.2d 150, 153 (Minn.1983). If the statute is substantive, however, the Court must engage in further choice of law analysis to determine which state's substantive law governs this action.

■ As stated above, Minnesota courts define substantive law as that which "creates, defines and regulates rights." *Stern,* 442 N.W.2d at 324, (quoting *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871, 879–80 (1958)). Procedural law, in contrast, regulates a plaintiff's remedy by prescribing the method of enforcing rights or obtaining redress for a violation of those rights. *Id.* Procedural rules affect the parties' relation-

ship as litigants, not as it relates to the underlying matter in dispute. *Zaretsky v. Molecular Biosystems, Inc.,* 464 N.W.2d 546, 550 (Minn.Ct.App.1990).

■ Nesladek equates the statute of repose to a statute of limitations, arguing that both relate equally to the time within which a plaintiff may commence a cause of action. Minnesota characterizes statutes of limitations as procedural, affecting only a plaintiff's remedy. *In re Daniel's Estate,* 208 Minn. 420, 294 N.W. 465, 469 (1940); *U.S. Leasing v. Biba Info. Processing Serv., Inc.,* 436 N.W.2d 823, 825 (Minn.Ct.App.1989). No Minnesota court has expressly characterized a statute of repose.

■ In addition to heeding the principles of Minnesota law regarding procedure and substance, the Court may look for guidance to Nebraska's characterization of its own statute. *Anderson,* 24 N.W.2d at 839; *Mason,* 610 F.Supp. at 404 n. 2. Despite Nesladek's efforts to differently interpret Nebraska law, the Court finds that Nebraska courts characterize their products liability statute of repose as substantive. In *Givens v. Anchor Packing, Inc.,* 237 Neb. 565, 466 N.W.2d 771, 773–74 (1991), for example, the Nebraska Supreme Court stated:

> The immunity afforded by a statute of repose is a right which is as valuable to a defendant as the right to recover on a judgment is to a plaintiff; the two are but different sides of the same coin. Just as a judgment is a vested right which cannot be impaired by a subsequent legislative act ... so too is immunity granted by a completed statutory bar.... These are substantive rights recognized by Nebraska law and protected by its constitution.

Nebraska courts repeatedly have recognized that unlike a statute of limitations, which precludes a party from suing on an existing claim, a statute of repose prevents the right of action from ever accruing. *See e.g., Gillam v. Firestone Tire & Rubber Co.,* 241 Neb. 414, 489 N.W.2d 289, 291 (1992); *Spilker v. City of Lincoln,* 238 Neb. 188, 469 N.W.2d 546, 548 (1991). *See also Peterson v. Fuller Co.,* 807 F.2d 151, 152–53 (8th Cir. 1986) ("when the 'injury [occurs] outside of the ten-year period, no substantive cause of action ... ever exist[s]' ") (citations omitted).

■ Nebraska's characterization of its statute is consistent with the principles set forth in Minnesota law. A statute of limitations provides a time period after the injury occurs within which the plaintiff may commence a cause of action. By penalizing a plaintiff for the delay in asserting his rights, the limitations period affects the plaintiff's remedy, rather than the underlying right. Thus, a statute of limitations is properly characterized as procedural.

■ In contrast, the limitations period in the statute of repose begins to run when the product is sold, rather than when the injury occurs. The statute focuses on the age of the product rather than on the plaintiff's timeliness in commencing the action. The limitations period may even expire, as in this case, before the injury occurs. Because it bars not only the remedy, but also the underlying cause of action itself, the statute of repose creates, defines and regulates a plaintiff's rights. *See Stern,* 442 N.W.2d at 324. Therefore, the Court holds that the Nebraska products liability statute of repose is a substantive rule of law.

■ Because the Nebraska statute is substantive rather than procedural, the Court must proceed under Minnesota choice of law analysis to decide whether Nebraska or Minnesota substantive law applies to this case. Before reaching Minnesota's five choice-influencing factors, the Court must determine whether the application of either state's law would violate due process. *Hime v. State Farm Fire and Cas. Co.,* 284 N.W.2d 829, 832 (Minn.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

■ Due process requires that the state applying its substantive law "have significant contact or a significant aggregation of contacts, creating state interests, such that the choice of law is neither arbitrary or fundamentally unfair." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981); *Lindquist v. State Farm Mut. Auto. Ins.,* 415 N.W.2d 28, 31 (Minn.Ct. App.1987). These contacts must not be slight or casual. *Hime,* 284 N.W.2d at 832.

■ Nebraska has several significant contacts to this action. First, the accident occurred in Nebraska. At the time of the accident plaintiff, her decedent and her husband all resided in Nebraska. Except for a period where the decedent received care at a rehabilitation center in Texas, the decedent received all medical treatment for his injuries in Nebraska. Additionally, Nesladek and her husband were employed in Nebraska at the time of the accident. The vehicle involved in the accident was purchased, garaged, maintained and insured in Nebraska. Mr. Nesladek and Gerald Kreikemeier, also a Nebraska resident, modified the vehicle in Nebraska. Finally, Ford does business in Nebraska. The Court finds these contacts sufficient to render application of Nebraska law consistent with due process.

Minnesota, in contrast, has only three contacts with the parties and this occurrence.[5] First, the allegedly defective steering column components of the 1976 Ford truck were installed and introduced into the stream of commerce in Minnesota.[6] Second, Ford does business in Minnesota. Third, after Nesladek's decedent's death and prior to commencing this action, Nesladek established residence in Minnesota and now acts as Minnesota court-appointed trustee for the probate estate of the decedent.

In *Allstate v. Hague*, the United States Supreme Court addressed the constitutional sufficiency of similar contacts. There, the victim was employed in Minnesota and commuted to Minnesota daily, the defendant did business in Minnesota and the plaintiff became a Minnesota resident prior to the institution of the action. *Allstate*, 449 U.S. at 313–19, 101 S.Ct. at 640–44. The Supreme Court held these contacts sufficient in the aggregate to satisfy due process. *Id.* at 320, 101 S.Ct. at 644.

■ The instant case presents a weaker connection to Minnesota, as Nesladek and her decedent neither resided nor worked in Minnesota at the time of the accident. Moreover, Minnesota's connection to the vehicle at issue is tenuous. By doing business in Minnesota, however, Ford had notice of potential lawsuits brought under forum law and cannot claim unfair surprise. Evaluating these contacts in the aggregate, the Court is not prepared to hold the application of Minnesota law to this case so arbitrary and fundamentally unfair as to violate due process.

■ After concluding that both states' contacts satisfy due process, the Court must apply the *Milkovich* choice-influencing considerations: (1) predictability, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of governmental interests, and (5) application of the better rule of law. *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973).

■ Predictability typically relates to consensual transactions and, thus, is not a relevant consideration in a tort case. *Id.*

■ The second factor, maintenance of interstate order, requires that the state whose laws are applied have sufficient connection with the facts in issue. *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48 (Minn. 1979), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Although this factor often merges with the threshold due process issue, the maintenance of interstate order requires more than constitutional sufficiency; it directs a court to "apply the law of no state which does not have substantial connection with the total facts and the particular issue being litigated." *Milkovich*, 203 N.W.2d at 412. *See also Schwartz v. Consolidated Freightways Corp. of Del.*, 300 Minn. 487, 221 N.W.2d 665, 668 (1974) (court may apply

---

5. Nesladek lists nine Minnesota "contacts" with this action. Plaintiff's Memorandum in Opposition to Ford Motor Company's Motion for Summary Judgment ("Plaintiff's Brief") at 23–24. Only three, however, constitute factual contacts with the parties and with the occurrence giving rise to this litigation. *See Allstate*, 449 U.S. at 308, 101 S.Ct. at 637.

6. Ford disputes Nesladek's claim that the allegedly defective components were taken from the 1976 Ford truck. For the purposes of this motion only, the Court will assume that the 1976 components are implicated in this action and that those components were "introduced into the stream of commerce on November 4, 1975, from Ford's St. Paul, Minnesota, facility." Plaintiff's Brief at 23.

choice of law factors after "the rather minimal due process standards" have been satisfied). Additionally, under this factor a court may consider other issues, such as forum shopping. *Hague*, 289 N.W.2d at 49. Because Minnesota's contacts with this case are not substantial, this factor warrants strong consideration. *Id.*

As noted above, the link between Minnesota and the conglomerated vehicle at issue is tenuous. Even assuming the allegedly defective components originated from the 1976 truck, Ford has produced evidence showing that the steering column assembly of the 1976 pickup was manufactured in Indiana and shipped as an assembled unit to Minnesota. Second Affidavit of Joseph M. Wills. Nesladek presents no contradictory evidence on that point.[7] At most, therefore, the transmission components of the 1976 vehicle were installed and introduced into commerce in Minnesota.

■ Moreover, while Ford's business presence in Minnesota may render application of Minnesota law neither arbitrary nor fundamentally unfair, as Ford conducts business in all fifty states, this factor should not be given great significance in the choice of law analysis. *Rush v. Savchuk*, 444 U.S. 320, 330, 100 S.Ct. 571, 578, 62 L.Ed.2d 516 (1980).

■ Finally, although a post-occurrence change of residence qualifies as a relevant contact in the due process analysis, *see Allstate*, 449 U.S. at 319, 101 S.Ct. at 643, forum shopping becomes a strong consideration under the maintenance of interstate order factor if any evidence indicates that the plaintiff relocated for the purpose of bringing suit. *Hague*, 289 N.W.2d at 49. The interest in preventing forum shopping increases where a state's contacts are minimal. *Stenzel v. State Farm Mut. Auto. Ins. Co.*, 379 N.W.2d 674, 676 (Minn.Ct.App.1986).

Here, plaintiff's husband acknowledged that the ability to bring suit under Minnesota law constituted a primary consideration in the family's relocation to Minnesota.

Q: ... But I am asking you, when you evaluate sitting here today the reasons that you moved to Minnesota, where or how important was the fact that you wanted to take advantage of Minnesota law?

\* \* \* \* \* \*

A: It's probably equal.

Q: The two things you identified as the reason: Are there two things we are talking about? One was the fact that you wanted to take advantage of Minnesota law and the second one was the availability for Jill's education?

\* \* \* \* \* \*

A: Well, everything, I would say, was equal. The first was with the law and with her going to college and just to move from the scene of where Jeremy was hurt on our place....

Defendant's Exhibit A at 134–45 (objections omitted). Because Minnesota has a minimal connection to the facts of this action and because application of Minnesota law would facilitate blatant forum shopping, the maintenance of interstate order factor strongly favors the application of Nebraska law.

■ The third *Milkovich* factor is the simplification of the judicial task. Because Minnesota courts are fully qualified to apply the laws of another forum, this consideration is irrelevant to the analysis. *Hague*, 289 N.W.2d at 49.

■ Fourth, the Court must consider the forum's governmental interest. This factor ensures that a court will not enforce rules contrary to its own policies and sense of justice. *Milkovich*, 203 N.W.2d at 414. Minnesota has an interest in fully compensating tort victims. *Hague*, 289 N.W.2d at 49. This interest, however, pertains to those victims injured and treated within Minnesota borders. *Hime*, 284 N.W.2d at 833. Full recovery enables those injured and receiving medical care in the state to meet financial obligations without state assistance, thus offsetting the economic burden on the state. *Hague*, 289 N.W.2d at 49; *DeRemer v. Pacif-*

---

7. Nesladek appears to concede that the steering column components were installed, but not man-

ufactured, in Minnesota. *See* Plaintiff's Brief at 23, 31.

ic *Intermountain Exp. Co.,* 353 N.W.2d 694, 698 (Minn.Ct.App.1984). Here, plaintiff's decedent was neither injured nor treated in Minnesota. Thus, unlike Nebraska, where decedent received substantial medical care, Minnesota lacks any significant economic interest in this case.

■ Under this factor, the Court must also evaluate Nebraska's interest in the application of its laws. *Myers,* 225 N.W.2d at 242. The products liability statute of repose reflects Nebraska's interest in limiting the liability of manufacturers for aging products.[8] The Nebraska Supreme Court has upheld Nebraska's ten-year limitation on products liability actions as neither arbitrary nor unfair. *Spilker,* 469 N.W.2d at 548. Permitting a plaintiff to circumvent Nebraska law and maintain a claim in a state lacking significant contacts with the action would thwart Nebraska's interest in applying its laws.

■ Nesladek asserts that the policies underlying the Nebraska repose statute conflict with Minnesota policy, as reflected by Minnesota's enactment of a useful life statute. Under Minnesota law:

> [i]n any action for the recovery of damages for personal injury, death or property damage arising out of the manufacture, sale, use or consumption of a product, it is a defense to a claim against a designer, manufacturer, distributor or seller of the product or a part thereof, that the injury was sustained following the expiration of the ordinary useful life of the product.

Minn.Stat. § 604.03 subd. 1 (1993). The Minnesota Supreme Court has described the useful life statute as a type of repose statute under which the jury determines the limitations period rather than the legislature. *Hodder v. Goodyear Tire and Rubber Co.,* 426 N.W.2d 826, 830 (Minn.1988), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). Regarding this statute the *Hodder* court stated: "[t]he legislature was concerned about expanding products lia-

bility and intended to limit the open-ended liability for aging products." *Id.*

The Minnesota useful life statute advances the same policy as Nebraska's statute of repose, albeit through a less rigid mechanism. Despite the arguments for and against measuring the limitations period by a "useful life" concept or by a fixed number of years, each statute serves to limit the liability of manufacturers. Thus, Nebraska law does not run afoul of Minnesota's concepts of fairness and equity. Because the action implicates a clear Nebraska interest not in conflict with Minnesota policy and because Minnesota lacks any significant interest in this action, the state interest factor strongly favors application of Nebraska law.

■ The final choice-influencing consideration is the application of the better rule of law. A court need not reach this consideration if the preceding four factors clearly dictate the application of one state's law. *Myers,* 225 N.W.2d at 244; *Hime,* 284 N.W.2d at 834. The Court concludes that the preceding factors mandate the application of Nebraska law; thus, the Court does not address this factor.

■ Based on the foregoing, the Court holds that Nebraska's statute of repose, Neb. Rev.Stat. section 25–224(2), is a substantive rule of law. Under Minnesota choice of law analysis, the Court will apply Nebraska law to this case; this cause of action is therefore barred by Nebraska's ten year limitations period for products liability claims.

## III. DEFENDANT'S MOTION TO TRANSFER VENUE

Ford moves this Court to transfer venue to the United States District Court for the District of Nebraska. Because the Court has granted summary judgment in Ford's favor, this motion will be denied as moot.

### CONCLUSION

Based on the files, records, and proceedings herein, including the briefs and argu-

---

**8.** This policy is particularly applicable to this case, involving a seventeen year-old and substan- tially modified vehicle.

ments of counsel, **IT IS HEREBY OR-DERED** that:

    1.  Nesladek's motion for certification to the supreme court is **DENIED;**

    2.  Ford's motion for summary judgment is **GRANTED** and plaintiff's complaint is **DISMISSED** with prejudice; and

    3.  Ford's motion to transfer venue is **DENIED AS MOOT.**

LET JUDGMENT BE ENTERED AC-CORDINGLY.